UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

2019 FEB 21 P 1:23

MATHIEW LOISEL
Plaintiff,

-v-

ROBERT CLINTON,
RICHARD LIBERTY
Defendants.

Case No.

CIVIL RIGHTS ACTION
42 U.S.C. § 1983
REQUEST FOR DECLARTORY
AND INJUNCTIVE RELIEF

## INTRODUCTION

This is a civil rights action filed by Mathiew Loisel, a state prisoner, for declaratory judgment and injunctive relief under 42 U.S.C. §1983, alleging conscious disregard and deliberate indifference to Plaintiff's serious medical needs in violation of the Eight Amendment and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. Plaintiff seeks to challenge the constitutionality of the practices, policies, and customs related to the treatment, diagnosis, and management of prisoners infected with Hepatitis C as carried out by Defendants.

## JURISDICTION

1.) This complaint alleges that the civil rights of plaintiff, Mathiew David Loisel, who presently resides at the Maine State Prison at 807 Cushing Road, Warren, Maine 04864, were violated by the actions of the below-named individuals; actions which were directed against plaintiff at the Maine State Prison for approximately four years and culminated in the events on January 31, 2018.

1

2.) The Court has jurisdiction over the Plaintiff's claims of violation of federal constitutional rights under 42 U.S.C. § 1331(1) and 1343. Plaintiff seeks injunctive and declaratory relief pursuant to 28 U.S.C § 2201 and 2202. Plaintiff claims for injunctive relief are authorized by 28. U.S.C. § 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure.

## PARTIES

3.) The Plaintiff Mathiew Loisel was incarcerated at the Maine State Prison at all times during the events described in this complaint.

4.) Defendant Dr. Robert Clinton, an employee of Wellpath, works at the Maine State Prison and is employed as the medical director. As part of his responsibilities, he oversees patient services, enforces diagnostic treatment modalities, making determinations about chronic health issues, and enforces standards and policies promulgated by the Maine Department of Corrections. Any medical recommendations and request for treatment, involving a specific course of treatment and/or medication, along with their associated cost, must be reviewed and approved by him. The Defendant is sued in his individual and official capacity.

5.) Defendant Richard Liberty, an employee of Wellpath, works at the Maine State Prison, and is employed as a Nurse Practitioner. Defendant's responsibilities include evaluating chronic care patients every six months who are infected with Hepatitis C, as well as making recommendations and determinations on the course of treatment with prisoners infected with Hepatitis C. This defendant is sued in his individual and official capacity.

6.) All the Defendants have acted, and continue to act, under color of state law at all times relevant to this complaint.

## FACTS

7.) Plaintiff became aware that he had been diagnosed with the Hepatitis C Virus (HCV) in March of 2014.

8.) HCV is both a chronic and life-threatening disease.

9.) All other life-threatening diseases are treated at the Maine State Prison. This list includes but is not limited to diabetes, cancer, kidney problems, and HIV.

10.) According to www.Mainegov.com, and the Medical Department at the Maine State Prison (MSP), forty to sixty percent of prisoners incarcerated at the Maine State Prison have Hepatitis C, which calculates to approximately 406-610 prisoners.

11.) As a result of having (HCV), Plaintiff suffers from chronic liver pain, trouble sleeping, chronic fatigue, ongoing stomach discomfort, and serious Gastrointestinal Reflux Disease (GIRD), which causes Plaintiff to cough up bile frequently.

12.) For the last five years, Plaintiff has been seen in the clinic for the purposes of chronic care and monitoring; lab reports show that Plaintiff liver enzyme levels were, and currently are, elevated.

13.) Plaintiff was prescribed the anti-acid Gaviscon by Defendant Liberty to ameliorate the acid-reflux symptoms associated with HCV.

14.) In January of 2018, Plaintiff submitted a sick call slip requesting to be examined by the facility medical provider.

15.) Plaintiff stated in his sick call slip that he was infected with Hepatitis C, and that he was, at the time, suffering from chronic pain in his liver and acid reflux. Plaintiff requested to be treated for the Hepatitis C Virus in the form of direct-acting-antiviral (DAAs) drugs.

16.) On January 31, 2018 plaintiff met with Defendant Liberty to discuss treatment for Hepatitis C.

17.) On January 31, 2018, Defendant Liberty told Plaintiff that he does not qualify for Hepatitis C treatment. Defendant Liberty stated that the Maine State Prison policies governing treatment for Hepatitis C is in accordance with the Federal Bureau of Prisons (BOP) standards as stated in the BOP's *Evaluation and Management of Chronic Hepatitis C Virus (HCV) Infection.*

18.) These standards include but are not limited to determining who receives treatment at the Maine State Prison using a diagnostic algorithm called the APRI score, as well as labs screenings including a CBC, PT/INR, liver panel, serum creatinine, eGFR, and a "quantitative HCV RNA viral load with reflex testing for HCV genotype."

19) When Plaintiff met with defendant Liberty on January 31, 2018, Defendant disclosed to Plaintiff that he needed to present an APRI scores equal or greater than 2 to qualify for treatment according to the MDOC policy.

20.) During that same meeting, Plaintiff requested to have a Sonogram and a HCV RNA viral load with reflex testing for test done, which Defendant Liberty said could not be done unless his APRI score warranted such. Defendant said he would forward Plaintiff's request for a sonogram and a HCV viral load with reflexing testing for genotype to Defendant Clinton, who oversees and makes determinations about such request.

21.) Upon receipt of Defendant Liberty's recommendation, Defendant Clinton denied Plaintiff's request for a sonogram and lab screenings even though these lab screenings would reveal Plaintiff's HCV viral load and HCV genotype.

22.) Upon information and belief, the customs, practices, and polices carried out by Defendant Liberty and Clinton are inconsistent with the Federal Bureau of Prisons guidelines,

which recommend all persons infected with HCV receiving a lab test to screen for HCV RNA viral load and genotype.

23.) Defendant Liberty told Plaintiff that it was the practice only to conduct such a lab test when a patient's APRI score warrants such.

24.) Plaintiff voiced concerns to Defendant Liberty that he found it astonishing that Defendants Clinton and Liberty were making a decision to deny Plaintiff's request for treatment with Direct-Acting-Antivirals (DAAs), despite not knowing what genotype he was infected with or the pathology of the unknown type of Hepatitis C. Plaintiff voiced concerns Defendant Liberty and Clinton's decisions were inconsistent with the treatment modalities set forth by the BOP and by community standards.

25.) On January 31, 2018, Plaintiff voiced concerns to Defendant Liberty that the APRI score was not an adequate gauge of HCV progression. Plaintiff cited to Defendant that the Centers for Disease Control (CDC) and the American Association for the Study of Liver Disease (AASLD) both recommend treatment for incarcerated peoples. Defendant Liberty told plaintiff that the only recourse Plaintiff had at that time was to pursue administrative action through the MDOC grievance process.

26.) On the very same, Plaintiff told Defendant Liberty that medical experts have stated that some people with normal ALT levels have moderate to severe HCV progression. Therefore, the APRI score, which is calculated using two liver enzyme levels (ALT and AST), is an inaccurate gauge of HCV progression. Because of this inaccuracy, medical experts in the *HCV Advocate* argue that the only real way to tell if a person infected with "HCV has liver damage is through a liver biopsy rather than through the measurement of ALT levels." Despite telling Defendant Liberty these facts, Defendant Liberty still told Plaintiff that he did not qualify for treatment.

27.) Defendant Liberty also disclosed to Plaintiff that he was being denied treatment with DAAs drugs pursuant to MDOC policy, not because of any medical exclusions.

28.) When Plaintiff told Defendant Liberty that denying him treatment with DAAs was an "injustice," Defendant Liberty responded by stating, "Unfortunately, [Defendant] Clinton has a fiduciary responsibility to the DOC and CSS to spend money wisely; the cost of these drugs [DAAs] are just too high. We cannot possibly treat everybody."

29) Upon information and belief, it is common knowledge that Defendants typically denying treating prisoners with DAA because of the associated costs.

30.) Defendant Liberty told Plaintiff he would continue to receive treatment pursuant to MDOC policy. Defendant Liberty said this treatment would consist of monitoring Plaintiff's health through blood draws every six months.

31.) Upon information and belief, the MDOC Hepatitis C policy, in terms of both how it is written and implemented, prevents those without significant fibrosis or cirrhosis from being approved for treatment with DAAs. Left untreated, Plaintiff will continue to suffer from HCV related complications, continued liver scarring, and damage possibly progressing into cirrhosis, including cirrhosis related complications such as ascites, portal hypertension, hepatic encephalopathy, and esophageal varices.

32.) Upon information and belief. the BOP's *Evaluation and Management Of Chronic Hepatitis C Virus (HCV) Infection,* which sets the criteria for treatment as used by Defendants Liberty and Clinton, denies treatment for prisoners as a result of disciplinary actions, the amount of time left in their sentence, and if they are in compliance with facility rules.

33.) Defendants Liberty and Clinton are aware of the available DAAs on the market for treatment.

34.) According to the HCV Advocate, more DAAs drugs have entered the market, and the costs associated with these drugs have lowered substantially.

35.) Considering that, Defendant Clinton is aware of the above fact, the HCV protocol that he enforces, which prevents treatment for all but those experiencing significant liver complications related to HCV, delays treatment for HCV through the administration of DAA drugs such as Harvoni, Solvaldi, and Vlekira Pak.

36.) Defendants Clinton and Liberty are also aware the aforesaid DAA medication will effect a cure of HCV in 90-95 percent of the cases of that disease, and that the substantial delay in treatment present in the current policy is likely to reduce the efficacy of these medications thereby prolonging the suffering of those who have been diagnosed with chronic HCV. Such actions allow the progression of the disease to accelerate so that it presents a greater threat of cirrhosis, hepatocellular carcinoma, and death of the inmate with such disease.

37.) Plaintiff reviewed the *Federal Bureau of Prisons Clinical Guidelines* for the treatment of HCV, as well as the national standards for the treatment of HCV, and offers the following relevant secondary facts below:

38.) The American Association for the Study of Liver Disease (AASLD), as well as the Center for Disease Control (CDC), have stated the standard of care for Hepatitis C is treatment for everyone using DAAs. Plaintiff cannot receive treatment despite this fact.

39.) The Infectious Disease Society of America (IDSA) "recommends treatment, using DAA therapies, for all patients with chronic HCV infection, except those with short life expectancies that cannot be remediated by treating HCV, by use of transplantation, or by other directed therapies."

40.) According to MDOC policy 18.8.1., which defers to the standards set by the American Correctional Association (ACA) and the Federal Bureau of Prisons clinical guidelines for the treatment and management of HCV, in order to receive treatment at the Maine State Prison, a person infected with Hepatitis C must meet criteria as established by an APRI (AST to Platelet Ratio Index) score.

41.) According to the *HCV Advocate*, over one-half of people with cirrhosis will present a ratio below two, and ratio scores can be influenced by other factors, such as liver enzymes and day-to-day fluctuations. Therefore, according to the HCV Advocate, the APRI score should not be the sole determinant relied upon to determine who receives HCV treatment.

42.) The Federal Bureau of Prisons *Evaluation and Management Of Chronic Hepatitis C Virus (HCV) Infection,* states that "As stated by the current American Association for the study of Liver Disease (AASLD) and the Infectious Disease Society of America (IDSA) and the HCV guidance, the goal of treatment of HCV-infected persons is to 'reduce all-cause mortality and liver-related health adverse consequences, including end-stage liver disease and hepatocellular carcinoma, by the achievement of virologic cure as evidenced by a sustained virologic response.'"

43.) The Federal Bureau of Prisons priority criteria for HCV treatment have three levels: Level 1: High Priority for treatment; Level 2: Intermediate Priority for Treatment; Level 3: Low priority for Treatment. According to the BOP, these levels prioritize whom does and does not meet criteria for treatment. In addition, the Defendants only use the APRI score to determine whether a prisoner meets the necessary criteria, and almost never order a biopsy or sonogram, even though such tests are more accurate and effective gauges of HCV disease progression.

44.) According to Defendant Liberty, a patient must present a score greater or equal to 2 to receive treatment in the form of DAAs.

45.) According to the Federal Bureau of Prisons priority Criteria for HCV treatment, a patient that presents an APRI score of 2 is also presumed to have advanced Hepatic Fibrosis, be in the Batts/Ludwig stage of 3 or 4 on liver biopsy, and is "suspected" of having cirrhosis of the liver.

46.) According to that very same matrix, patients that present an APRI score of 2 also qualify for a liver transplant.

47.) According to the Federal Bureau of Prison's *Evaluation and Management of Chronic Hepatitis C Virus (HCV) Infection,* the formula for calculating the APRI score is $[(AST/AST\ ULN) \times 100]$ platelet count $(10^9/L)$.

48.) According to the *HCV Advocate*, HCV viral load does not correspond with disease progression, nor do people with normal ALT levels have minimal disease progression.

49.) After reviewing the aforementioned information, on January 31, 2018, Plaintiff filed a Stage one grievance with the Maine State Prison challenging the decision not to provide Plaintiff with medical care for his chronic HCV.

50.) On February 8, 2018, the grievance officer responded to Plaintiff's Stage One grievance, denying the merits of the grievance, citing the Health Service Administrator, Lisa Lampson, who stated, "CCS follows the Federal Bureau of Prisons guidelines/recommendations for treatment of HCV. You are seen in chronic care every six months and have labs drawn to monitor your health. At this time your APRI score not meet criteria."

51.) On July 29, 2018, Plaintiff wrote a letter to Defendants Liberty and Clinton, notifying each that the DOC Polices governing treatment for HCV were not in accordance to the standards set by the CDC, the World Health Organization, the Infectious Disease Society of America, and the American Association for the Study of Liver Disease.

52.) Plaintiffs aforesaid letter remains unanswered, and all attempts to receive treatment at this time have been denied.

53.) Upon information and belief, the actions of defendants pose a concern toward the safety of the general public. MDOC's webpage (www.mainegov.com) estimates that 40-60 percent of the prison population at the Maine State Prison has Hepatitis C, compared to one percent of the general public. The Maine State Prison roster reveals that approximately fifty-one percent of the population at prison will return to society in the next four years. Therefore, these facts suggest the risk of an HCV epidemic among the general public when these inmates are released.

54.) Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs describes herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this court grants the declaratory and injunctive relief which plaintiff seeks.

## EXHAUSTION OF ADMINSTRATIVE REMEDIES

The Plaintiff has exhausted his administrative remedies with respects to all claims and defendants. Plaintiff used the prisoner grievance procedure available at the Maine State Prison to try to solve the problem to no avail. Each of the stages in the grievance process was denied.

## LEGAL CLAIMS

55.) Plaintiff realleges and incorporates by reference paragraphs 1-54.

56.) The actions of Defendants Liberty and Clinton's failure to provide treatment in the form of the administration of DAAs, despite knowing that Plaintiff is diagnosed with Hepatitis C, constitutes deliberate indifference and conscious disregard to Plaintiff's serious medical needs in violation of the Eight Amendment.

57.) By failing to treat Plaintiff's Hepatitis C with DAAs, and by failing to protect Plaintiff against deliberate indifference to his serious medical needs, Defendants Clinton's and Liberty's actions are causing Plaintiff to suffer irreparable harm to his liver, endure unnecessary pain, and allow Plaintiff's Hepatitis C to progress, thereby allowing Plaintiff's Hepatitis C to possibly progress to a stage untreatable with DAAs. These actions constitute deliberate indifference and a conscious disregard to Plaintiff's serious medical needs in violation of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment.

58.) By denying Plaintiff the ability to receive treatment in the form of the administration of DAAs, despite them being the community standard of care, and in choosing a course of monitoring over treatment, defendants are consciously disregarding the known risks of Plaintiff's serious medical needs which constitutes a conscious disregard and deliberate indifference in violation of the Eighth Amendment.

59.) The actions of Defendants Liberty and Clinton in failing to be in compliance with the Clinical guidelines set forth by the Federal Bureau of Prisons constitutes a conscious disregard and deliberate indifference to Plaintiff's serious medical needs in violation of the Eight Amendment and the Due Process Clause of the Fourteenth Amendment.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff requests that the court grant the following relief:

A. Issue a declaratory judgment stating that:

1. Defendants Liberty and Clinton's failure to provide adequate medical care in the form of DAAs for the Plaintiff violated the Plaintiff's rights under the Eight Amendment to the United States.

2.) The customs, practices, and polices as carried out by Defendants Liberty and Clinton are inconsistent with the Federal Bureau of Prisons clinical guidelines for the treatment and management of HCV, and are inconsistent with the standards of community care, which violated the Plaintiff's right under the Eight Amendment and the Due Process Clause of the Fourteenth Amendment to the United States.

B.) Issue an Injunction ordering Defendants Clinton and Liberty, or their agents to:

1.) Immediately conduct the necessary lab testing necessary to determine Plaintiff's HCV RNA viral load and genotype.

2,) Immediately begin treating Plaintiff HCV with the DAAs specific to his genotype.

3.) Carry out without delay the on-going treatment directed by such medical practitioners with respects to the recommended course of action associated with DAAs.

C.) Grant such other relief as it may appear that plaintiff is entitled.

Dated: February 18, 2019

Respectfully submitted,

*[signature]*

Mathiew Loisel
MDOC #66129
Maine State Prison
807 Cushing Road
Warren, Me 04864

## VERIFICATION

I have read the forgoing complaint and hereby verify that the matters alleged therein true, except as to matters alleged on information and belief, and, as to those, I believe then to be true. I certify under penalty that the foregoing is true and correct.

12

Executed at Warren, Maine on February 18, 2019.

_____
Mathiew Loisel