# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| MATHIEW LOISEL, | * | |
| Individually and on behalf of a class of | * | |
| similarly situated persons | * | |
| | * | |
|    Plaintiff | * | |
| | * | |
| v. | * | |
| | * | |
| ROBERT CLINTON, M.D., | * | |
| | * | |
| RICHARD LIBERTY, | * | CIVIL ACTION NO. 1:19-cv-00081-NT |
| | * | |
| WELLPATH, LLC, | * | |
| | * | |
| MAINE DEPARTMENT OF | * | |
| CORRECTIONS, | * | |
| | * | |
| RANDALL LIBERTY, | * | |
| Commissioner of Maine Department of | * | |
| Corrections, | * | |
| | * | |
| And | * | |
| | * | |
| | * | |
| MATTHEW MAGNUSSON, | * | |
| Warden of Maine State Prison, | * | |
| | * | |
|    Defendants | * | |

## AMENDED COMPLAINT
## (DEMAND FOR JURY TRIAL, INJUNCTIVE RELIEF, AND CLASS CERTIFICATION REQUESTED)

Plaintiff Mathiew Loisel ("Loisel"), by and through counsel, on behalf of himself and others similarly situated, asks this Court to require the State of Maine's corrections officials and their contracted medical providers to end the practice of withholding curative treatment to inmates with chronic Hepatitis C virus ("HCV"), as follows:

## INTRODUCTION

1.      Plaintiff Loisel and the class he seeks to represent are inmates in the custody of the Department of Corrections ("DOC") who have been diagnosed with chronic HCV. Chronic HCV is a highly communicable and progressive disease that, if left untreated, scars the liver and can cause, among other things, cancer, portal hypertension, excruciating pain, and death.

2.      The standard of care for chronic HCV is an 8 to 12-week course of daily oral medications known as direct-acting antivirals ("DAA"). A course of DAAs has few side effects and achieves a cure in more than 90 percent of cases.

3.      Wellpath, LLC ("Wellpath"), acting on behalf of the Maine State Prison ("MSP") and the DOC, routinely and systematically fails to provide adequate medical care to incarcerated individuals in Maine. Loisel, on behalf of himself and similarly situated individuals, files this lawsuit to ensure that he and other inmates receive the medical care they require, and to which they are entitled under federal law and the United State Constitution.

4.      Defendants have a policy or practice that requires inmates with chronic HCV to wait until their disease has progressed to the point where they have permanent liver damage before they are eligible for DAA treatment.

5.      Defendants' policy or practice denies DAA treatment to Loisel and hundreds of other inmates with chronic HCV. There is no medical rationale for denying Plaintiff and other similarly situated individuals life-saving treatment; Defendants' only rationale is that it saves them money, at least in the short term. The policy is not only cruel; it also facilitates the spread of a dangerous and costly epidemic.

6.      Defendants' denial of necessary medical care to Loisel and other members of the Class violates their right to be free from discrimination based upon a disability as guaranteed by

the Americans with Disabilities Act. Further, Defendants' deliberate indifference to Mr. Loisel's and other members of his Class's suffering and long-term consequences of denying treatment violate their constitutional right to be free from cruel and unusual punishment as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

7.     Loisel seeks declaratory and injunctive relief to enjoin the Defendants to provide him and other members of his Class with DAA treatment and prevent further suffering.

## PARTIES

8.     Plaintiff Mathiew Loisel was sentenced to 30 years in prison in February 2008, at the age of 22. He has been incarcerated at the MSP in Warren, Maine, since 2012. He is in the legal custody and control of the DOC.

9.     Wellpath, LLC, is a Delaware limited liability company. Wellpath, was formerly known as Correct Care Solutions, LLC. Its principal place of business is Nashville, Tennessee. Wellpath has regional offices in nine states, including Maine. Wellpath contracts with the DOC to provide medical care to prisoners at the MSP and other Maine correctional facilities.

10.     Defendant Robert Clinton, M.D. ("Dr. Clinton"), is Medical Director for Wellpath at the MSP.

11.     Defendant Richard Liberty ("Nurse Liberty") is a Nurse Practitioner employed by Wellpath at the MSP.

12.     At all times relevant to this complaint, both Dr. Clinton and Nurse Liberty were acting as employees and/or agents of Wellpath and under color of state law.

13.     Upon information and belief, Wellpath, through its agents and employees, including Dr. Clinton and Nurse Liberty, is responsible for developing, implementing, and enforcing the DOC's policy regarding the treatment of prisoners with chronic HCV.

14. Randall Liberty ("Commissioner Liberty") is the Commissioner of the DOC. As such, he has oversight and authority over all aspects of the management and governance of DOC, including each Maine state correctional facility. He has responsibility for ensuring the delivery of necessary medical treatment for the serious medical needs of all individuals held in DOC's correctional facilities. Commissioner Liberty is sued in his official capacity.

15. At all times relevant to this Complaint, Commissioner Liberty has acted, and will continue to act, under the color of law.

16. Matthew Magnusson ("Warden Magnusson") is the Warden for the MSP. As such, he is responsible for ensuring the delivery of necessary medical treatment for the serious medical needs of all individuals incarcerated at the MSP. Warden Magnusson is sued in his official capacity.

17. At all times relevant to this Complaint, Warden Magnusson has acted, and will continue to act, under the color of law.

18. The Department of Corrections is a Department of the State of Maine. The DOC is responsible for the direction and general administrative supervision, guidance and planning of both adult and juvenile correctional facilities and programs within the State. Its responsibilities include, among other things, ensuring that those persons in its custody receive appropriate and timely medical care.

## JURISDICTION

19. This action seeks to vindicate rights guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983.

20. This action is also brought pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134.

21.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under federal law. Jurisdiction is also authorized pursuant to 28 U.S.C. § 1343(a)(3).

22.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because all the events and omissions giving rise to this action occurred within this judicial district and because Defendants are subject to personal jurisdiction in this District.

23.     Upon information and belief, Plaintiff Loisel has exhausted his administrative remedies in accordance with 42 U.S.C. § 1997e(a). He has used the prisoner grievance procedure at the Maine State Prison, but has been denied treatment at every stage in the process.

## FACTS

### A. Chronic HCV

24.     HCV is a blood-borne infectious disease, which is transmitted through exposure to infected blood. HCV can be transmitted by, among other things, piercing, tattooing, injectable drug use, and sexual intercourse. According to the U.S. Department of Health and Human Services, Centers for Disease Control and Prevention ("CDC"), HCV is ten times more infectious than HIV. *See* https://www.cdc.gov/nchhstp/newsroom/docs/factsheets/Hepatitis-C-A-Silent-Epidemic-Infographic.pdf

25.     According to the CDC, more people die from HCV than from all of the 60 other reported infectious diseases combined. According to conservative estimates, more than 20,000 people in the United States die from HCV complications every year.

26.     Seventy-five to 85 percent of people who are infected with HCV will go on to develop chronic HCV, which is characterized as a Hepatitis C infection that lasts longer than six months.

27.     Chronic HCV impacts the liver. It also has the potential to affect multiple other organs and bodily functions.

28.     There is no way to predict which newly infected patients will develop advanced liver disease.

29.     One common hepatic manifestation of chronic HCV is fibrosis, or scarring of the liver. The most severe form of scarring is called cirrhosis.

30.     Cirrhosis is associated with increased rates of liver transplants and increased risk of death.

31.     Cirrhosis can cause irreversible scarring and can permanently reduce liver function.

32.     Cirrhosis can cause additional painful complications, including, among others, pain throughout the body, jaundice, fluid retention with edema, abdominal ascites, mental confusion, lymph disorders, and extreme fatigue.

33.     Each day without treatment increases a person's likelihood of developing chronic liver disease, fibrosis, cirrhosis, liver cancer, painful complications, and death from liver failure.

34.     Each day without treatment increases the risk that the untreated patient will spread HCV to others.

**B.  HCV in Prisons**

35.     HCV is a growing public health crisis in Maine and throughout the United States.

36.     HCV is particularly prevalent among incarcerated populations. It has been estimated that approximately 17 percent of the prison population in the United States has HCV.

37.     In addition, more than one-third of people in the United States with HCV infection pass through the correctional system annually.

38.     DOC records indicate that, as of October 2017, there were 580 inmates in MSP infected with HCV. *See* **Exhibit 1**, obtained through a FOAA request.

39.     More than 90 percent of persons who are incarcerated are eventually released back into the community. More than half of the MSP population will likely be released within the next four years.

40.     When inmates with untreated HCV are released back into the general population, they are likely to contribute to the HCV public health crisis by transmitting HCV to the general population.

**C.   Appropriate Treatment of HCV**

41.     It is widely accepted within the medical and public health communities that the appropriate treatment for chronic HCV is a regimen of DAAs. DAA regimens last approximately 8 to 12 weeks.

42.     DAAs target specific HCV proteins, thereby disrupting viral replication and infection.

43.     DAAs are well-tolerated and highly effective: a regimen of DAAs eliminates chronic HCV in more than 90 percent of patients. Those patients who have successfully achieved virologic cure can no longer transmit the virus to others.

44.     Treatment with DAAs should begin as early in the course of a patient's chronic HCV infection as possible. A delay in DAA treatment for HCV decreases the benefits associated with cure.

45.     The American Association for the Study of Liver Disease and the Infectious Disease Society of America "strong[ly]" recommend that all patients with chronic HCV receive antiviral treatment, except those with a short life expectancy that cannot be remediated by HCV

treatment. The Center for Disease Control encourages health care professionals to follow the evidence-based standard of care developed by the American Academy for the Study of Liver Disease and the Infectious Disease Society of America.

46.     Non-incarcerated MaineCare beneficiaries diagnosed with chronic HCV have access to DAA regimens. The MaineCare program does not require evidence of liver damage before the approval of DAA treatment.

### D.  **Defendants' Treatment Policy**

47.     The DOC, in consultation and in combination with the other Defendants, have promulgated, and continue to enforce, a policy that severely restricts the treatment of chronic HCV among Maine's prison population, in contravention with prevailing medial guidelines on appropriate treatment of chronic HCV and in deliberate indifference to the serious medical need for treatment.

48.     As of October 31, 2017, the DOC was aware that more than 580 Maine prisoners were infected with chronic HCV. At that time, Defendants were actively treating three patients for chronic HCV. One of those inmates was being treated because he was taken into DOC custody after he had already started his course of DAAs. *See* **Exhibit 1**, obtained through a FOAA request.

49.     Upon information and belief, today, there remain hundreds of prisoners in DOC custody who have been diagnosed with chronic HCV. The overwhelming majority are not receiving treatment.

50.     The policy or protocol for all prisoners in custody of the Maine DOC requires a patient sustain a certain level of liver damage before being treated.

51.     Specifically, in order to receive DAA treatment, a Maine DOC inmate with HCV must meet criteria as established by an aspartate aminotransferase ("AST") to Platelet Ratio Index ("APRI") score.

52.     Upon information and belief, a Maine DOC inmate with HCV must present an APRI score of 2.0 or greater in order to qualify for treatment with DAAs.

53.     An APRI score is an imprecise evaluation of liver damage. When an APRI score is high, it is a fairly reliable indicator of severe fibrosis or cirrhosis, but low and mid-range scores do not pick up many people who have significant fibrosis or cirrhosis.

54.     For instance, in more than 90 percent of patients, an APRI score of 2.0 or higher indicates that the patient has cirrhosis of the liver. But more than half of people with cirrhosis will not have an APRI score of 2.0 or higher.

55.     Stated differently, under Defendants' policy, even some patients with cirrhosis of the liver do not qualify for treatment of their chronic HCV.

56.     Upon information and belief, all Defendants are aware of, have consented to, and have participation in the implantation of, the DOC policy or protocol that denies inmates medically appropriate treatment until they present an APRI score of 2.0 or greater.

57.     The DOC policy is incongruent with policies promulgated by other agencies within the State of Maine. For example, non-incarcerated MaineCare beneficiaries who have been diagnosed with HCV have access to DAA regimens, irrespective of the extent of their liver damage.

**E.  The Course and Treatment of Loisel's Chronic HCV**

58.     In or around March 2014, Plaintiff learned that he had been diagnosed with HCV.

59.     Since 2014, Plaintiff has suffered from chronic HCV. Manifestations of his disease include, but are not limited to, chronic fatigue, abdominal pain, and acid reflux.

60.     Since 2014, Defendants have routinely monitored Plaintiff's chronic HCV. At no point have Defendants offered to treat Plaintiff's chronic HCV with a DAA regimen.

61.     On or about January 31, 2018, Plaintiff met with Nurse Liberty. During that meeting, Plaintiff requested treatment for his chronic HCV.

62.     Nurse Liberty refused to provide Plaintiff treatment. Nurse Liberty informed Plaintiff that he did not qualify for treatment under Defendants' policy for treatment of chronic HCV, because he did not have an APRI score equal to or greater than 2.0.

63.     During the January 31, 2018 meeting, Nurse Liberty told Plaintiff, in sum and substance, that "the costs of these drugs is just too high" and that Defendants "cannot possibly treat everybody."

## CLASS ACTION ALLEGATIONS

64.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all persons:

> (1) who are in the legal custody of the Maine Department of Corrections, regardless of facility location; and
>
> (2) who have been incarcerated for at least 14 days or completed an initial healthcare screening, whichever occurs first; and
>
> (3) who have been diagnosed with chronic HCV;
>
> (4) for whom DAA treatment has not been provided;
>
> (5) and for whom DAA treatment is medically appropriate.

65.     This action can be maintained as a class, because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

66.     <u>Numerosity</u>: It is estimated that the number of Class members is in the many hundreds. Joinder of all Class members is impracticable.

67.     <u>Common Questions Predominate</u>: This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members. Thus, proof of a common set of facts will establish the right of each Class member. Questions of law and fact common to each Class member include, for example:

(a) Whether Defendants promulgated, maintain, and enforce a policy to precludes inmates with chronic HCV in DOC custody from receiving appropriate treatment;

(b) Whether Defendants' policy regarding treatment of chronic HCV of prisoners violates the Eighth and Fourteenth Amendments to the United States Constitution;

(c) Whether Defendants' policy regarding treatment of prisoners with chronic HCV violates the Americans with Disabilities Act;

68.     <u>Typicality</u>: The named Plaintiff has been diagnosed with chronic HCV, is subject to Defendants' policy or practice concerning chronic HCV treatment and screening, has been denied chronic HCV treatment with DAAs, and is at the same kind of risks of substantial harm as members of the Class. The injuries of each member of the putative Class were, and are, caused directly by Defendants' unlawful and unconstitutional conduct.

69.     <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interest of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with, or are antagonistic

to, the interests of the Class members. Plaintiff is committed to obtaining declaratory and injunctive relief that will benefit themselves and the Class by ending Defendants' unlawful policy or practice of denying appropriate care for inmates with chronic HCV. Plaintiff is represented by experienced counsel who experience with complex civil litigation, including class actions.

70.     The requirements of Rule 23(b)(2) are satisfied. Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or will end the unlawful policy or practice for all Class members, allowing them to receive proper treatment for chronic HCV.

71.      Plaintiff and members of the proposed Class have suffered, and will continue to suffer, grave and irreparable harm unless the Court orders Defendants to provide the safe and effective treatment of chronic HCV with DAAs as described herein.

### CAUSES OF ACTION
### Count I — Eighth and Fourteenth Amendments to the U.S. Constitution
### via 42 U.S.C. § 1983
***Brought by Plaintiff on his own behalf and on behalf of the putative class***

72.     Plaintiff incorporate the foregoing paragraphs as though fully contained herein.

73.     Plaintiff and the Class suffer from a dangerous and painful medical condition and have a serious medical need for treatment.

74.     Defendants know of and enforce the policies and practices described above. They know of Plaintiff and the Class's serious medical needs, but intentionally refuse to provide treatment addressing those needs. Defendants know that failure to treat those serious medical needs has harmed Plaintiff and the Class and continues to place them at substantial risk of serious harm.

75.     Defendants have failed to provide failed to provide timely and appropriate care to Plaintiff and the Class. This constitutes deliberate indifference to the serious medical needs of Plaintiff and other similarly situated inmates infected with chronic HCV, thereby establishing a violation of U.S. Const. amend. VIII and XIV, for which 42 U.S.C. § 1983 provides declaratory, equitable, mandamus, and legal remedies.

### Count II— Americans with Disabilities Act, 42 U.S.C. 12131, et seq.

*Brought by Plaintiff on his own behalf and on behalf of the putative class*

76.     Plaintiff incorporates the foregoing paragraphs as though fully contained herein.

77.     The Americans with Disabilities Act ("ADA") and its subsequent amendments prohibit public entities from discriminating against persons with disabilities in their programs, services, and activities. 42 U.S.C. § 12131-12134.

78.     The ADA defines "public entity" as any state or local government or "any department, agency. . . or other instrumentality" of a state or local government. 42 U.S.C. § 12131(1 )(A), (B).

79.     DOC is a "public entity" as defined by the ADA. DOC has legal custody of hundreds of individuals that have been diagnosed with chronic HCV.

80.     Defendants Commissioner Liberty and Warden Magnusson are individuals who are responsible for DOC' s policies and practices and are authorized representatives of DOC. Defendants Dr. Clinton, Nurse Liberty, and Wellpath are DOC's contracted agents for the purposes of carrying out the conduct described herein.

81.     Plaintiff and members of the putative Class each have a disability within the meaning of the ADA. An infection with a potentially deadly communicable virus constitutes a physical or mental impairment that substantially limits several major life activities.

82.     Plaintiff and members of the putative Class are regarded by Defendants as having a disability because Mr. Loisel has been subjected to the Defendants' chronic HCV policies or practices because he is infected with chronic HCV.

83.     The Defendants have policies or practices to address the entire range of serious medical conditions that arise for individuals that are within DOC's legal custody. Upon information and belief, in no other similar set of circumstances does DOC maintain policies or practices that depart from the provision of appropriate treatment of a serious medical condition on the basis of non-medical considerations, as alleged herein.

84.     Plaintiff and the Class are excluded from appropriate medical treatment by reason of their disabilities. Defendants discriminate against Plaintiff and the Class on the basis of their disabilities by denying or withholding medically necessary treatment for non-medical reasons unrelated to the standard of care, as described throughout this Complaint. Defendants have singled out individuals infected with chronic HCV to be subjected to policies and practices that lack any medical or otherwise rational justification in a manner distinct from Defendants' policies or practices for individuals with other medical needs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court issue the following relief:

a. A declaratory judgment that Defendants' policy or practice of denying or withholding DAA treatment from the Plaintiff and putative class members violates the Eighth Amendment.

b. A declaratory judgment that Defendants' policy or practice of denying or withholding DAA treatment from the Plaintiff violates the Americans with Disabilities Act.

c. An injunction ordering Defendants to: (i) formulate and implement an HCV treatment policy that meets the current standard of medical care, including in identifying and monitoring

persons with HCV; (ii) treat Plaintiff and members of the Class with appropriate DAAs; (iii) provide Plaintiff and members of the Class an appropriate and accurate assessment of their level of fibrosis or cirrhosis, counseling on drug interactions, and ongoing medical care for complications and symptoms of chronic HCV; and (iv) include in any future contract with any entity to which it delegates its responsibility to provide for the medical needs of class members a provision that requires medical treatment consistent with the Court's Order.

      d. Any further appropriate injunctions necessary to prevent future violations of Plaintiff and the Class's rights.

      e. Certify that this action be maintained as a class action with a class definition as set forth herein.

      f. Certify the Named Plaintiff identified herein as class representative and Plaintiff's undersigned counsel as class counsel.

      g. Award Plaintiff's costs, including reasonable attorneys' fees.

      h. Allow any further relief to which Plaintiff and the Plaintiff Class may be entitled.

### **DEMAND FOR A JURY TRIAL**

Plaintiff Loisel demands a jury for all issues so triable.

Dated:  June 26, 2019                            ___/s/ Miriam A. Johnson_____
                                                 Miriam A. Johnson, Esq.
                                                 Taylor Asen, Esq.
                                                 Berman & Simmons, P.A.
                                                 P.O. Box 961
                                                 Lewiston, ME  04243-0961
                                                 (207) 784-3576
                                                 mjohnson@bermansimmons.com
                                                 tasen@bermansimmons.com
                                                 Attorneys for Plaintiff and the Putative Class

                                                 _/s/ Peter Mancuso_____
                                                 Peter Mancuso, Esq.
                                                 Andrew Schmidt, Esq.
                                                 Andrew Schmidt Law, PLLC
                                                 97 India Street
                                                 Portland, ME  04101
                                                 (207) 619-0884
                                                 peter@maineworkerjustice.com
                                                 Attorneys for Plaintiff and the Putative Class

1599552.doc

16